UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-284 (ECT)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JENNIFER LYNN BOUTTO,

    Defendant.

**GOVERNMENT'S SENTENCING POSITION**

Defendant Jennifer Lynn Boutto pled guilty to embezzling $315,739.87 from the Bois Forte Band of Chippewa during her employment at the Fortune Bay Resort Casino. (Dkt. 1, 12.) Despite personal difficulties—which would not justify her criminal conduct—Boutto's theft outpaced her apparent need. The United States recommends that the Court impose a sentence of 18-months' imprisonment followed by a 2-year term of supervised release, which falls at the bottom of the applicable Guidelines range. Such a sentence reflects the severity of Boutto's actions, holds her accountable for the impact those actions had on the Bois Forte community, promotes respect for the law, and achieves the balancing goals of Title 18, United States Code, Section 3553.

## Boutto's Criminal Conduct

Jennifer Lynn Boutto—a 32-year-old Caucasian woman—moved to Minnesota in 2004 to live with her boyfriend and find stability following a tumultuous childhood. (PSR ¶¶ 33-36.) In many respects, she succeeded. Boutto married, completed a nursing certificate, and attained stable employment. (PSR ¶¶ 36-37, 63-64.) Beginning in 2008, Boutto began working at the Fortune Bay Resort Casino in Tower, Minnesota. (PSR

¶ 63.) Despite earning promotions over the next decade, Boutto eventually chose to exploit her position to address personal issues and finance her lifestyle. (PSR ¶ 6-9.)

By June 2013, Boutto had been promoted to Front Desk Supervisor at Fortune Bay, which permitted her to issue cash refunds without direct oversight. (PSR ¶ 7.) Boutto's scheme to defraud was premised on this access. Boutto identified customers who spent significant money at Fortune Bay and, after the customer checked out, issued a false cash refund against the invoice. (*Id.*) Boutto concocted various reasons for the refunds and then retrieved the cash for herself from Fortune Bay's vault. (*Id.*) The scheme worked, and Boutto's confidence in it grew over time. (PSR ¶ 8.) Boutto increased her average false refund over time—from $28 in 2013 to $531 in 2019—and, over the course of her scheme, multiplied the total annual theft by almost 6 times. (*Id.*) By the time of her October 2019 termination, Boutto already had stolen over $88,000 in the span of 10 months. (*Id.*)

| Year | Number of False Refunds | Total Stolen |
|---|---|---|
| 2013 | 533 | $15,060.22 |
| 2014 | 636 | $20,220.07 |
| 2015 | 614 | $29,296.30 |
| 2016 | 431 | $40,704.17 |
| 2017 | 382 | $57,756.15 |
| 2018 | 232 | $64,515.78 |
| 2019 | 166 | $88,187.18 |
| **Grand Totals** | **2994** | **$315,739.87** |

Between June 2013 and October 2019, Boutto executed her scheme 2,994 times for a total of $315,739.87. (*Id.*)

Boutto ultimately opted to resolve this matter via information. (Dkts. 1, 12.) On March 9, 2021, Boutto pled guilty to stealing $315,739.87 from the Bois Forte Band of Chippewa. (*Id.*) Boutto has complied with all pretrial release conditions and secured temporary employment at Walmart while awaiting sentencing.

## The Presentence Report

The PSR correctly calculated a Guidelines range of 18-24 months based on a total offense level of 15 and a criminal history category of I. (PSR ¶ 70.) The parties do not have any outstanding objections or disputes regarding the PSR. (PSR at A.1.)

## The Appropriate Sentence

Fraud tends to root in rationalization, and Boutto is no exception. Although the government does not dispute that Boutto faced family financial difficulties, those debts were not the responsibility of the Bois Forte Band of Chippewa. Boutto's embezzlement exploited a marginalized population and added to sentiments of community mistrust. These realities require clear deterrence and accountability that must be balanced against Boutto's unique circumstances and acceptance of responsibility. The government recommends a sentence of 18 months' imprisonment followed by a 2-year term of supervised release. (Dkt. 57.)

Boutto's path to employment at Fortune Bay is undeniably complex. (PSR ¶¶ 33-39.) She survived childhood trauma, overcame an education gap, and endured mental-health challenges. But this journey also includes clear choices. Boutto's medical diagnoses and her husband's disabilities presented long before the onset of her

fraudulent scheme. (PSR ¶¶ 35-37, 43-52.) Boutto also benefitted from emotional and financial support before, during, and after her fraud. (PSR ¶¶ 42, 67.)

The PSR indicates that medical bills may have motivated aspects of Boutto's fraud scheme. (PSR at ¶¶ 13, 37.) Although a regrettable circumstance, this neither excuses nor fully explains Boutto's conduct. It is undeniable that the cost of medical insurance depleted Boutto's net pay. So too did her husband's medical conditions and resulting challenges finding employment. At its worst, it appears that Boutto's monthly medical expenses—the total of her medical insurance and out-of-pocket expenses—totaled approximately $1,300 a month. (*Id.*) Even if annualized over the entirety of the scheme, this would equate to $15,600 in such expenses a year.[1] But Boutto issued herself the averaged equivalent of a $45,105 cash bonus every year during her 7-year fraud scheme. This annualized amount eclipsed her highest-ever salary and essentially doubled her income. (PSR at ¶ 63.) And the fact that Boutto stole cash helped her avoid detection and taxes on these ill-gotten gains.

Regardless of medical expenses, Boutto's scheme outpaced her apparent need and eventually became a mechanism of greed. Boutto started relatively small, avoided detection, and then ratcheted up the severity of her conduct every year for 7 years. (PSR ¶ 8.) The government's analysis of Boutto's bank activity during the last 1.5 years of her fraud scheme—when she stole the most—substantiates this assertion. Boutto spent significant sums on Amazon, travel, and a SiriusXM radio subscription. Boutto also

---

[1] The government is aware that Ms. Boutto is preparing a summary of her medical expenses, which she hopes to provide to the government and the Court ahead of the sentencing hearing.

admittedly enjoyed relatively expensive recreational activities such as hunting, fishing, and riding ATVs. (PSR ¶ 39.) It also is relevant that Boutto minimized other expenses by living on family land and receiving financial support from other sources. (PSR ¶ 67.)

The government does not dispute that Boutto has endured hardship that likely motivated her actions. Boutto also ultimately accepted responsibility. Despite lying and minimizing the theft when Fortune Bay discovered her misconduct in 2019, Boutto quickly opted to resolve the matter when confronted with prosecution. (PSR at ¶ 12.) But Boutto also continues to rationalize her behavior as rooted solely in necessity. (PSR at ¶ 13.) Boutto must come to grips with two realities—the Bois Forte Band of Chippewa was not responsible for paying her bills and her embezzlement expanded well beyond covering bare necessities.

Boutto engaged in a long-term fraud scheme that targeted a marginalized Minnesota community—a sentiment that the victim-impact statement filed by the Bois Forte Band of Chippewa addresses quite eloquently. (Dkt. 28.) This informs the seriousness of the offense and the need for punishment that promotes respect for the law and deters others from resorting to such measures. But Boutto's criminality also must be balanced against her unique characteristics, which somewhat contextualize her actions as stemming from more than simple greed. Boutto also will benefit from correctional treatment to further her mental-health treatments and engage in a fuller understanding of her actions and the resulting harm. On balance, a sentence at the bottom of the applicable Guidelines range simultaneously reflects the serious nature of this offense while accounting for Boutto's history and circumstances.

## Conclusion

For these reasons, the government respectfully submits that a sentence of 18-month's imprisonment followed by a 2-year term of supervised release fully comports with the United States Sentencing Guidelines and the factors of Title 18, United States Code, Section 3553(a).

Dated: September 9, 2021         Respectfully Submitted,

W. ANDERS FOLK
Acting United States Attorney

*/s/ Jordan L. Sing*

JORDAN L. SING
Assistant United States Attorney
Attorney ID No. 393084