UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-284 (ECT)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JENNIFER LYNN BOUTTO,

        Defendant.

**GOVERNMENT'S SENTENCING REPLY**

Defendant Jennifer Lynn Boutto's request for a non-custodial sentence ignores nearly all tenets of 18 U.S.C. § 3553(a). Boutto's narrow focus on her history and characteristics—essentially to offer justification for her embezzlement—misses the mark. Boutto's position fails to acknowledge that her theft outpaced her apparent need and ignores how her years-long fraud shook the trust of a small community. The sentence in this matter must account for these case-specific circumstances to provide just punishment and deter others from such conduct. The United States respectfully submits that an 18-month sentence—at the bottom of the applicable Guidelines range—recognizes Boutto's mitigating circumstances while simultaneously achieving the broader goals of the United States Sentencing Guidelines and Section 3553(a).

### I. Boutto's Theft Outpaced Desperation

Boutto asserts that she committed this crime out of desperation to pay medical bills and make ends meet. (Dkt. 30 at 3.) But Boutto's fraud increased over time and she stole approximately $229,054.44 in cash over the last 18 months of her fraud scheme. This equates to $12,725.25 a month in tax-fee income. Neither Boutto's

sentencing position nor her financial records suggest a *need* for such an exorbitant monthly cashflow, which was above and beyond her regular income. Boutto also does not contend that uncontrollable monthly expenses directly correlate to the increasing severity of her theft.

Boutto's bank records for this 18-month period reveal spending inconsistent with desperation, a conservative sampling of which includes: $2,080 on entertainment, $8,426 on health and beauty services, $1,381 on hotels, $1,800 on liquor, $2,741 for motorcycle services, $5,600 on Amazon purchases, $3,692 on iTunes purchases, $4,620 on other retail purchases, and $1,514 at restaurants. Boutto also appeared to pay $373 per month for her cellphone and maintained a SiriusXM subscription. An additional $22,457 was either withdrawn in cash or transferred to other accounts or individuals. This spending is in addition to other recreational activities enjoyed by the Bouttos, including hunting, fishing, and recreational vehicles. (PSR at ¶ 67.) Other categories of expenses appear as legitimate costs of living—gas, Internet, grocery, general retail—but stand somewhat in contrast to Boutto's assertion that she regularly required financial assistance from family to cover such expenses.

The government details this spending not to cast judgment on Boutto's lifestyle, but to respond directly to Boutto's efforts to contextualize her crime. Although financial circumstances may have motivated Boutto's actions—again, not an excuse—it simply does not account for the full scope of her misconduct. Boutto did not eliminate discretionary spending, live as leanly as possible, and then steal the

bare minimum to makeup the difference. It also is unclear if Boutto ever sought to utilize other programs or services that may have been able to help control her medical expenses and avoided the perceived need to steal. At some point, Boutto chose to steal because it financed aspects of a lifestyle she could not otherwise afford. This reality is relevant, given Boutto's attempt to frame her criminality as steeped solely in desperation.

## II. A Guidelines Sentence for this Specific Offense Provides Just Punishment, Necessary Deterrence, and Does Not Create Unwarranted Disparity

Boutto contends a probationary sentence is sufficiently severe, that a sentence based on deterrence is not necessary, and that such a disposition would be consistent with comparable cases. The government disagrees. Instead of recognizing the widespread impact of her crime, Boutto's sentencing position focuses exclusively on how this criminal prosecution has negatively affected her life.

It is vital that criminal sentencing reflect the unique realities of each crime, including its broad impact on society. Here, that must recognize that a non-Tribe member stealing $315,739.87 in northern Minnesota lands differently than many corporate fraud or tax matters. The victim impact statement submitted by the Bois Forte Band of Chippewa highlights the broad distrust sown by Boutto's actions and the deep impact her actions had on the Tribe. (Dkt. 28.) It also speaks to how Boutto's crimes directly affected the Tribe's ability to provide medical services to its own members. (*Id.*) This heightens the need to craft a sentence that reflects the seriousness of *this* offense and provides just punishment for it.

The impact on the community also underscores the need to fashion a sentence that serves as a general deterrent.  The message cannot be that non-Tribe members can unilaterally engage in the equivalent of interest-free financing at the expense of the Tribe.  And, more generally, it remains that an employee cannot simply steal from their employer to finance solutions to subjective need.  A non-custodial sentence may well invite others to deem such theft worth the risk, particularly given that these crimes often go undetected for years.

Finally, Boutto provides a list of probationary dispositions as anecdotal evidence that a probationary sentence would not create an unwarranted sentencing disparity.  The utility of such a list is limited.  Although the government could provide a similar list in which approximated circumstances and loss amounts resulted in custodial sentences, the parties no doubt would find distinguishing factors in nearly every example.  *See, e.g.*, Levine (20-cr-51; SRN), Willor (19-39; ECT), Taggart (18-93; MJD), Linsmeier (18-48; DWF); Jackson (15-cr-153(5); DSD), Anderson (15-184(2); JRT), Eischens (14-cr-291; MJD), Shepperd (14-cr-49; JRT).  This is also one of many relevant sentencing factors, and disparity is measured against similar conduct.  Here, the government has highlighted the many unique factors of this prosecution.  Moreover, the disparity argument is Boutto's to carry.  The Guidelines render Boutto ineligible for a probationary disposition, (PSR ¶ 76), and a sentence at the bottom of the applicable Guidelines range simply would not create an unwarranted disparity.

## Conclusion

In its sentencing recommendation, the government has attempted to careful balance Boutto's unique circumstances against the broader impacts of her crime. The government respectfully submits that a sentence of 18-month's imprisonment, followed by a 2-year term of supervised release, fully comports with all aspects of the United States Sentencing Guidelines and the goals of Title 18, United States Code, Section 3553(a).

Dated: September 16, 2021	Respectfully Submitted,

W. ANDERS FOLK
Acting United States Attorney

*/s/ Jordan L. Sing*

JORDAN L. SING
Assistant United States Attorney
Attorney ID No. 393084